IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION
————————————————

| | | |
|---|---|---|
| JONATHAN WAYNE VANDERSLOOT, | ) ) | Cause No. CV 04-130-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER AND |
| vs. | ) | FINDINGS & RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

————————————————

On September 20, 2004, Jonathan W. Vandersloot filed this action

for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  On December

5, 2005, at Vandersloot's request, the case was stayed to permit him to

exhaust certain claims in state court.  On March 31, 2009, Vandersloot

moved to lift the stay.

Vandersloot is a state prisoner proceeding pro se.

I. Screening of the Petition

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. If summary dismissal is not warranted, the judge may order the respondent to file a pleading or "take other action the judge may order." Id.

II. Trial Testimony[1]

Vandersloot was charged in Montana's Twenty-Second Judicial District, Big Horn County, with sale[2] of dangerous drugs, a violation of Mont. Code Ann. § 45-9-101. State v. Vandersloot, 73 P.3d 174, 176 ¶ 7 (Mont. 2003); Pet. (doc. 1) at 2 ¶ 1. He was represented by James Vogel. The charge was based on an incident that occurred while Vandersloot was an inmate at the Big Horn County Jail in Hardin, Montana.

---

[1] Vandersloot attached the trial transcript to his Petition.

[2] A "sale" includes giving away a dangerous drug. Mont. Code Ann. § 45-9-101(1) (1997).

Jail policy for dispensing prescription medication required a jailer to place the inmates' prescribed doses into paper cups and hand the cup to the appropriate inmate. Some jailers did not use the cups and instead handed the inmates the bottle containing the full monthly dosage. On a few occasions, an inmate poured many pills out of a bottle handed to him by a jailer. The jailer carried the medication in a box from a locked storage cabinet to the inmates. Inmates were required to sign a sheet showing that they received medication. One sheet was kept for each prescription of each inmate. The dispensing officer was supposed to note a "CO" number on the sheet — for example, CO3 was jailer Albert Medicine Horse. Trial Tr. at 186:1-187:8, 203:1-22 (Burke); id. at 221:8-222:6 (Bahm); id. at 300:25-302:8 (Hert); id. at 405:4-406:23 (White); Med. Sign-Out Sheet (doc. 17 #2). Vandersloot testified that he sometimes signed for his medication and then did not receive it because the jailer stopped to do something else. He did not know of any particular dates when that occurred. Trial Tr. at 426:2-429:3.

On August 15, 1999, Trent Burke, an inmate trustee, reported to a jailer that he had just seen Vandersloot and Sam Big Hair, Jr., snorting four three- to four-inch lines of a pinkish-white powder in the jail's

dayroom.  Vandersloot and Big Hair were sitting at the end of a table just out of range of a surveillance camera.  Trial Tr. at 170:24-171:10, 173:8-174:10, 179:20-180:25 (Burke); 216:16-218:7 (Bahm).

On August 16, a urinalysis test was administered to Big Hair.  The result was presumptively positive, though the test was not sufficiently reliable to be admitted into evidence.  Based on the positive UA, Big Hair was interviewed by investigating officers.  Trial Tr. at 9:11-11:3, 141:13-142:3 (in chambers).

At trial, Big Hair said he stole two black and orange capsules from the jail medication tray, swallowed one, and snorted the other.  He didn't know what they were, and he didn't know why he ingested them.  Id. at 276:23-277:8.  He said he ingested the pills on the same day he stole them, and he said Medicine Horse was the jailer on duty.  Big Hair did not know on what day he stole the pills.  Id. at 285:13-15, 274:9-11, 288:14-289:5.  Big Hair did not describe how he was able to pick up a bottle or cup that did not belong to him without being seen.

The two officers who interviewed Big Hair on August 16 testified that they interviewed him specifically about the events of August 15.  Big Hair told them he took the pills on the 15th when Medicine Horse was on

ORDER AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 4

duty.  Medicine Horse was not at the jail on August 15.  Id. at 294:3-14
(Secrist); 298:1-15 (Hert).

Dexedrine was the only medication in black and orange capsules in
the jail at the time.  Vandersloot was the only inmate with a Dexedrine
prescription.  Id. at 306:7-16, 327:6-19 (Hert).  The capsule itself was black
and clear, but it contained tiny pinkish-orange pellets that could be
ground into an orange or light orange powder.  Snorting the powder would
produce a high similar to that produced by methamphetamine.
Vandersloot also had a prescription for amoxicillin, which could be ground
into white powder and used as a cutting agent with the Dexedrine.  Id. at
325:10-327:5 (Raymond).

Vandersloot's monthly Dexedrine prescription contained thirty pills.
As of August 16, he had signed for 27 pills.  Three pills were left in his
bottle.  Id. at 305:11-306:2 (Hert).  Medicine Horse gave Vandersloot his
medication on August 1.  He might have given out medication on August
12 – more likely, that was CO4 – but he did not give out medication after
that.  Trial Tr. at 315:13-14 (Hert); Med. Sign-Out Sheet.

Before the incident, Big Hair transferred $30.00 from his inmate
account to Vandersloot's account.  Both he and Vandersloot testified that

the money was intended for the purchase of cassette tapes.  The purchase was not made, and Vandersloot did not return the money.  Id. at 274:22-276:5, 277:23-25 (Big Hair); id. at 431:12-432:21 (Vandersloot). Vandersloot had ordered tapes for another inmate in the past, and the inmate received those tapes.  Id. at 390:18-394:2 (Crooked Arm).

III. Procedural History

Trial commenced on May 10, 2000.  On May 11, 2000, after deliberating for three and a half to four hours, the jury found Vandersloot guilty.  He was sentenced to twenty-five years' imprisonment, consecutive to sentences he was already serving on two counts of burglary. Vandersloot, 73 P.3d at 176 ¶ 7; Pet. at 2 ¶ 3.  His parole eligibility was not restricted.  Judgment at 1-4, State v. Vandersloot, No. DC 99-47 (Mont. 22d Jud. Dist June 15, 2000).[3]

Vandersloot appealed.  On July 10, 2003, the Montana Supreme Court affirmed his conviction.  Vandersloot, 73 P.3d at 175 ¶ 1.  It concluded that the evidence was sufficient to support the verdict, id. at 179-80 ¶¶ 28-34; that the trial court did not err in admitting Vandersloot's

---

[3]  This document is attached to the Petition.

medication sign-out sheet, id. at 178-79 ¶¶ 19-27; and that the trial court properly admitted Burke's testimony, id. at 177-78 ¶¶ 9-18.

Vandersloot then filed a state habeas petition in the Montana Supreme Court, challenging the validity of his sentence.[4]  On March 23, 2004, the Montana Supreme Court denied the petition.  Vandersloot v. Mahoney, No. 03-692 (Mont. Mar. 23, 2004).

Vandersloot filed a habeas petition in this Court on September 20, 2004.  On December 5, 2005, United States Magistrate Judge Richard W. Anderson stayed the case because Vandersloot had filed a postconviction petition in the trial court.  Order Staying Case (doc. 5) at 1-2; Rhines v. Weber, 544 U.S. 269, 277 (2005).  Vandersloot periodically filed status reports in compliance with that Order.

On September 28, 2007, this Court lifted the stay and required Vandersloot to file an Amended Petition.  Order Lifting Stay and Requiring Petitioner to Amend (doc. 14) at 1.  Shortly after that Order was issued, Vandersloot filed a status report, advising the Court that an evidentiary hearing had been held on September 5, 2007.  Vandersloot

---

[4]  The record before the Court does not indicate the filing date of this petition.

filed his Amended Petition on October 31, 2007.

On July 16, 2008, the <u>Rhines</u> stay was reimposed because the state trial court had not yet ruled on the postconviction petition.  On July 24, 2008, Vandersloot moved to lift the stay, asserting that the trial court had ruled but he was not satisfied with its ruling.  He was advised that he must appeal the decision "to maximize his opportunity to move forward in this Court."  Order Denying Mot. to Lift Stay (doc. 20) at 2.

Thereafter, Vandersloot filed two status reports.  In the first, he said that he had filed a notice of appeal in August 2008.  Status Report (doc. 21) at 1.   In the second, he stated that he had not received any correspondence from the trial court.  He attached a copy of the pro se notice of appeal he reported filing in August 2008.  Status Report (doc. 22) at 1; Notice of Appeal (doc. 22 #1) at 2.

On March 31, 2009, Vandersloot filed another motion to lift the stay.  He states that he has written to the Clerk of the Twenty-Second Judicial District Court and to the Clerk of the Montana Supreme Court but has not received a response from either office.  Mot. to Lift Stay (doc. 23) at 1-2.

The records of the Montana Supreme Court show no pending action in Vandersloot's name.

ORDER AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 8

III. Vandersloot's Allegations

A. Original Petition

Vandersloot's original petition raises three issues.  First, he claims that his right to due process was violated because the evidence was not sufficient to support the jury's guilty verdict.  Pet. at 5 ¶ 12A ("Claim A").

Second, Vandersloot claims that his Sixth Amendment right to confront his accusers was violated by admission of the jail's medicine sign-out sheet.  Id. ¶ 12B ("Claim B").

Third, Vandersloot claims that his Sixth Amendment right to a fair trial was violated when the district court allowed testimony by witness Trent Burke.  Vandersloot argues that because Burke was a "convicted liar" and the state rewarded him with a "get out of jail free card" in exchange for his testimony, his testimony misled the jury and should have been excluded.  Id. at 6 ¶ 12C ("Claim C").

B. Amended Petition

Vandersloot was ordered to amend his petition "to set forth those claims that he is currently in the process of exhausting in state court." Order (doc. 14) at 1.  Therefore, the Amended Petition adds claims but does not substitute for the original Petition.

Vandersloot claims that his Sixth Amendment right to the effective assistance of counsel was violated in several respects.  He asserts that Vogel failed to make an appropriate objection to admission of the medication sign-out sheet ("Claim D1"); failed to move for a mistrial after Burke mentioned the inadmissible urinalysis test ("Claim D2"); and himself entered an exhibit mentioning the urinalysis test ("Claim D3"). Am. Pet. (doc. 16) at 3 ¶ 15A; see also id. at 8 ¶¶ 15F, 15G.  In a memorandum filed in support of his amended petition, Vandersloot adds that counsel should have moved to exclude Burke's testimony based on the "appearance of impropriety" created by the reduction of Burke's sentence. Mem. (doc. 17) at 17-18 ("Claim D4").

Second, Vandersloot contends that the State erroneously claimed at trial that 27 of thirty of his pills were accounted for, whereas, in fact, seven of thirty pills were unaccounted for.  He also claims that the State failed to disclose this exculpatory evidence.  Am. Pet. at 4 ¶ 15B ("Claim E").

Third, Vandersloot asserts that he was denied his right to counsel at his presentence interview and was not advised that he had a right to counsel.  Id. at 4-5 ¶ 15C ("Claim F").

Fourth, Vandersloot alleges that his 25-year sentence amounts to an "excessive sanction."  He claims that the sentence is twice the time given to other offenders in the same jurisdiction "who have committed more serious crimes," "contrary to the sentencing policy of the State of Montana."  Id. at 5 ¶ 15D ("Claim G").  He adds that some conditions of his parole are not reasonably related to the offense of conviction.  Id. at 9 ¶ 15H ("Claim H").

IV. Analysis

At this point, the Court is at a loss to understand what happened in state postconviction proceedings and why.  It seems clear that the Montana Supreme Court will not be considering the merits of Vandersloot's postconviction claims.  It is not possible at this point to determine whether Vandersloot's claims are procedurally defaulted or whether any default might be excused.

Vandersloot's case raises issues of exhaustion, procedural default, and possibly the federal statute of limitations.  Given the history of the matter, however, it is appropriate now to lift the stay and proceed to the merits without further delay.   28 U.S.C. § 2254(b)(2);  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (making detailed analysis of

constitutional issue despite outstanding question as to procedural bar);
Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983).

Federal habeas jurisdiction lies only for petitioners who allege that
they are "in custody in violation of the Constitution or laws or treaties of
the United States."  28 U.S.C. § 2254(a).  Other sources of federal law,
such as the Federal Rules of Criminal Procedure, do not bind the States.
E.g., Boardman v. Estelle, 957 F.2d 1523, 1525 (9th Cir. 1992).  Federal
relief is not available for violations of state law.   Nunes v. Ramirez-
Palmer, 485 F.3d 432, 443 (9th Cir. 2007); Martinez v. Ylst, 951 F.2d 1153,
1156 (9th Cir. 1991).

A. Burke's Testimony (Claims C and D4)

While Mont. R. Evid. 601(b) permits disqualification of a witness
who "is incapable of understanding the duty of a witness to tell the truth,"
no federal law requires state judges to make pretrial determinations of
credibility.  Competence to testify is established if there is some evidence
that a witness has personal knowledge of a fact in issue.  Mont. R. Evid.
602; cf. Fed. R. Evid. 601, 602.[5]  Burke claimed he saw the incident he

---

[5]  The Federal Rules of Evidence are not binding on the States.  Within certain
limits, the States may enact witness competency standards that are more stringent
than the Federal Rules.  But it is still useful to consider federal law; if the trial court's

described.  Other witnesses agreed he was at the jail on the day in question and reported the incident.  Therefore, Burke unquestionably was a competent witness.  It was the jury's duty to decide whether he actually had personal knowledge, or was telling only part of the truth, or was making up the whole story.

Confrontation – examination under oath before the fact-finder – is the crucible of witness credibility.  U.S. Const. Am. VI; <u>Crawford v. Washington</u>, 541 U.S. 36, 68-69 (2004).  Before opening statements, the jury was instructed about its duty to consider each witness's credibility. Trial Tr. at 150:1-152:4.  The jury considered all the reasons Vandersloot proffers to challenge Burke's credibility.  It knew that Burke failed to appear for trial on his second charge of driving under the influence, that he was driving a semi-tractor trailer, and that he falsified the log books to try to cover his misdeeds.  It knew he was sentenced in absentia to serve the maximum term, six months in jail.  The jury also knew that, after Burke reported the incident, his jail time was reduced to time served and he avoided fines and charges of about $1500.00.  <u>Id.</u> at 190:23-195:2.

---

admission of Burke's testimony would have been correct under Fed. R. Evid. 601, then it did not violate the Federal Constitution.

Vogel even called the Justice of the Peace who sentenced Burke. The JP admitted that he questioned his authority to change Burke's sentence so long after the time to appeal had expired. He explained that he asked the parties – including the prosecutor in Vandersloot's case – for briefing on the issue. Even though they did not give it to him, he reduced Burke's sentence. Trial Tr. at 367:7-370:13. The jury considered all this evidence in determining Burke's credibility, including whether he received a benefit for his testimony against Vandersloot. There was no violation of federal law. <u>Compare, e.g.</u>, <u>Silva v. Brown</u>, 416 F.3d 980, 987-88 (9th Cir. 2005) (noting that prosecution's withholding of evidence undermined jury's ability to determine witness's "competence and credibility").

Vandersloot also claims that trial counsel should have objected to Burke's testimony on the grounds that his sentence reduction created an "appearance of impropriety." Mem. at 17-18. To support a claim of ineffective assistance of counsel, Vandersloot must show both that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability the outcome of the proceeding would have been different, but for counsel's error. <u>Strickland v.</u>

Washington, 466 U.S. 664, 687-88, 694 (1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

The appearance of impropriety is an ethical standard, not a legal or constitutional one.  No federal or state law requires the exclusion of testimony on that basis.  And, again, the jury knew the circumstances. Vandersloot can show neither deficient performance nor prejudice.

Claims C and D4 should be denied.

B. Medication Sign-Out Sheet (Claims B and D1)

Vandersloot contends that admission of the medication sign-out sheet violated his rights under the Confrontation Clause of the Sixth Amendment.  The sign-out sheet was an unsworn, out-of-court statement. It was offered to prove that Vandersloot received 27 Dexedrine pills.  It was hearsay.

Ohio v. Roberts, 448 U.S. 56 (1980), was the controlling federal law at the time of Vandersloot's trial and direct appeal.[6]  Roberts held that the

---

[6] Roberts was overruled by Crawford v. Washington, 541 U.S. 36, 62-65 (2004). Crawford is not retroactive to collateral challenges such as Vandersloot's.  Whorton v. Bockting, 549 U.S. 406, 409 (2007).  Even if it were, the medication sign-out sheet was not prepared in anticipation of litigation and was not testimonial in character.  Its admission did not violate the Confrontation Clause under the Crawford test.  See, e.g. Davis v. Washington, 547 U.S. 813, 821 (2006); Crawford, 541 U.S. at 56 (describing business records as non-testimonial in character).  .

Confrontation Clause is not violated by admission of hearsay evidence or testimony if "the evidence falls within a firmly rooted hearsay exception." 448 U.S. at 66.

The sign-out sheet was admitted as a record of regularly conducted activity under Mont. R. Evid. 803(6). The Montana rule is identical to the federal rule. It describes a firmly rooted exception to hearsay. <u>E.g.</u>, <u>Crawford</u>, 541 U.S. at 56 (citing business records exception as example of firmly rooted hearsay exception); <u>United States v. Johnson</u>, 297 F.3d 845, 864 n.14 (9th Cir. 2002). Consequently, federal habeas relief is available only if it was unreasonable for the trial court to find that the sign-out sheet was a record of regularly conducted activity. <u>See</u> <u>Winzer v. Hall</u>, 494 F.3d 1192, 1198-99 (9th Cir. 2007).

Ideally, the sign-out sheet would have been admitted through the testimony of a custodian. But Vandersloot makes no argument that the sign-out sheet or any one of his 27 signatures on it was fabricated. The procedure by which the record is created need not be flawlessly executed. After all, missing entries in records of regularly conducted activities are also hearsay exceptions. Mont. R. Evid. 803(7); Fed. R. Evid. 803(7). The jury knew of and considered the occasional deviations in the procedure for

ORDER AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 16

handing out medication, but none of these procedural variations included handing out medication without having the inmate sign for it. The jury considered Vandersloot's claim that he sometimes signed for medication without receiving it. The sign-out sheet itself did not make his claim more or less likely. Any error in the admission of the document was minor and did not rise to the level of a violation of the Sixth Amendment's Confrontation Clause.

Because Vandersloot does not contest the sign-out sheet's authenticity, he cannot show prejudice from counsel's failure to object to lack of foundation. Strickland, 446 U.S. at 694.

Finally, even if this Court found a Roberts violation or ineffectiveness of counsel, any retrial would occur under the rule of Crawford. The record is undoubtedly admissible under Crawford. 541 U.S. at 56.

Claims B and D1 should be denied.

C. Number of Missing Pills and Brady Claim (Claim E)

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963).

Vandersloot does not say what evidence shows that his Dexedrine prescription was refilled on June 22, 1999.  Mem. at 15.  (Perhaps he means July 22, 1999 – only that date could leave seven pills unaccounted for in mid-August.)   The medication sign-out sheet showed that Vandersloot's prescription was refilled on July 15, 1999.  Trial Tr. at 416:1-3.  Thirty pills were originally placed in the bottle.  Vandersloot signed for 27 pills.  That left three.  Those three were in the bottle.  Id. at 305:11-306:2.  All of the pills were accounted for.  Claim E should be denied.

D. Big Hair's Urinalysis Test (Claims D2, D3)

Vandersloot contends that Vogel should have moved for a mistrial when Burke mentioned urinalysis tests.  The prosecutor asked Burke what happened after he reported the incident to jail officials.  Burke responded, "Well, nothing really.  I mean I didn't – I just stayed to myself.  And then I guess the next day they gave them a urinalysis."  Trial Tr. at 183:10-12 (emphasis added).  Vogel objected.  The prosecution moved on.

Burke's reference was brief and unsolicited.  The jury was never told whether Vandersloot was tested, much less what the result was.  Vogel did not want to emphasize the point by requesting a limiting instruction,

and the trial court agreed that the reference was too brief to undermine the fairness of the trial.  Id. at 270:17-271:16.  There is no reasonable probability that a motion for mistrial would have been granted.  Claim D2 should be denied.

Sometime before trial, Big Hair sent Vogel an affidavit stating that he had no knowledge of the incident in question.  Trial Tr. at 278:22-279:5.  The affidavit included a letter from Big Hair's attorney, Kevin Gillen, in which Gillen mentioned that Big Hair's urinalysis test was positive.  Trial Tr. at 281:10-282:24, 287:21-289:3; Big Hair Aff. (doc. 17 #7); Letter from Gillen to Big Hair (doc. 17 #8).

In cross-examination, Vogel introduced the affidavit to show the jury that Big Hair spurned the State's offer of substantial benefits for his testimony against Vandersloot.  Except for information favorable to Vandersloot, the affidavit did not tell the jury anything it did not already know from Big Hair's own testimony.  There was neither deficient performance nor prejudice.[7]  Claim D3 should be denied.

---

[7] During its deliberations, the jury asked, "How soon after August 15th was the UA done on Sammy Big Hair?" and "Was Sammy and Cotton's interview written down?"  The jury was instructed to decide the case on the evidence already presented.  Trial Tr. at 479:12-480:1.  Because Big Hair admitted using Dexedrine, these questions do not indicate a reasonable probability that the jury would have acquitted

E. Sufficiency of the Evidence (Claim A)

A state habeas petitioner is entitled to federal habeas relief if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979); <u>In re Winship</u>, 397 U.S. 358, 364 (1970) (federal Constitution requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged."). Because it remains "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," <u>Jackson</u>, 443 U.S. at 319, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution," <u>id.</u> at 326.

The prosecution introduced evidence that the drug involved was Dexedrine, Trial Tr. at 324:8-327:22, which is prohibited under Mont. Code Ann. § 50-32-224(3); that Vandersloot was the only inmate who had a prescription for Dexedrine; and that all 30 Dexedrine capsules from

---

Vandersloot if urinalysis tests had not been mentioned at all.

Vandersloot's prescription bottle were accounted for, id. at 305:11-306:2. A reasonable juror could infer that Big Hair was unlikely to forget what day he stole the Dexedrine, because he got into trouble over it. It was also unlikely that even a busy jailer who was not following protocol would have placed other inmates' prescriptions within Big Hair's reach and failed to notice if he took something. A reasonable juror could find that Big Hair knew why he ingested the pills – to get high – and could reasonably infer that he refused to incriminate Vandersloot out of a misguided sense of honor. A reasonable juror might also have noticed that Medicine Horse had not dispensed medication since at best August 12, and more likely August 1. The evidence was sufficient to support the verdict. Claim A should be denied.

F. Sentencing Claims (Claims F, G, H)

1. Right to Counsel

Persons convicted in state court have a right to remain silent in presentence interviews. Mitchell v. United States, 526 U.S. 314, 326 (1999); Estelle v. Smith, 451 U.S. 454, 463 (1981). Vandersloot exercised that right. Presentence Report (doc. 17 #9) at 4. There is no clearly established federal right to counsel in presentence interviews.

Additionally, Vandersloot identifies no prejudice to him that could have been prevented if counsel were present. He claims the writer of the presentence report – Big Hair's probation officer, Cotton Secrist – was "vindictive," but he does not identify anything objectionable in the presentence report. It is unexceptional. Moreover, counsel had an opportunity to correct inaccuracies at the sentencing hearing. Claim F should be denied.

### 2. "Excessive Sanction"

To the extent Vandersloot contends his sentence violated the policy of the State of Montana, he claims an error of state law and cannot obtain federal habeas relief.

The claim may also be construed to assert a violation of the Eighth Amendment proscription against cruel and unusual punishment. "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Solem v. Helm, 463 U.S. 277, 289-90 (1983); see also, e.g., Lockyer v. Andrade, 538 U.S. 63, 73-77 (2003) (finding no violation of clearly established federal law where defendant, who stole videotapes worth about $150, was sentenced to fifty years to life in prison); Rummel v. Estelle, 445 U.S. 263,

264-65 (1980) (holding that life sentence without possibility of parole imposed against defendant who obtained $120.75 by false pretenses did not violate Eighth Amendment).

Vandersloot argues that he gave a very small quantity of Dexedrine to Big Hair. Mem. at 19-20. No federal law requires the States to make sentences for drug crimes proportional to the quantity of drugs involved. Claim G should be denied.

### 3. Conditions of Parole

There is no clearly established federal law requiring States to impose only parole conditions that are reasonably related to the offense of conviction. If state law was violated, Mem. at 21 – and the Court is not concluding it was – the sole remedy lies in state court.

An irrational condition might trigger federal due process protection, but the conditions to which Vandersloot objects are plainly reasonable. His record includes two burglary convictions. CONWeb, http://app.mt.gov//conweb (accessed Apr. 14, 2009). Burke testified that Vandersloot snorted some of the Dexedrine. Trial Tr. at 173:12-174:10. Redding's testimony, id. at 335:9-337:12, suggested that Vandersloot was a "wheeler-dealer" in jail, willing to break rules in exchange for benefits

from others.  It is not irrational to preclude persons who abuse other drugs from using alcohol.  It is not irrational to preclude persons willing to profit from illegal activity from associating with other such persons or from making major purchases without preapproval by an officer.  Mem. at 20.  Claim H should be denied.

V. Certificate of Appealability

    A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  <u>See</u> <u>Hohn v. United  States</u>, 524 U.S. 236 (1998); <u>Lambright v. Stewart</u>, 220 F.3d 1022, 1024 (9th Cir. 2000).  The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  <u>Lambright</u>, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

<u>Lozada v. Deeds</u>, 498 U.S. 430, 432 (1991) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  <u>See also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong."). Any doubt as to whether a petitioner has met the standard is resolved in his favor. Lambright, 220 F.3d at 1025. The Court must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1).

B. Discussion

Vandersloot's trial was not marred by constitutional error. The jury simply believed witnesses other than Vandersloot and Big Hair. Admission of Burke's testimony did not violate a federal proscription against "the appearance of impropriety" or witnesses who are not credible. There is no such proscription. The jury knew of all the reasons to question Burke's credibility. Admission of the medication sign-out sheet did not violate the Confrontation Clause under Roberts because the sheet was a record of regularly conducted activity and Vandersloot did not claim it was not authentic. Vandersloot claims the prosecution violated Brady by failing to disclose exculpatory evidence showing that seven pills were not accounted for, but he refers to no evidence showing that seven pills were not accounted for. The trial court's order in limine was violated when Burke mentioned that urinalysis tests were administered after the incident, but the reference was fleeting and indefinite, and the matter was

ORDER AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 25

immediately dropped.  Big Hair admitted using Dexedrine, and his test was the only one whose results were disclosed to the jury.  Big Hair's admission drained any possible prejudice from mention of his urinalysis test.  Vandersloot was the only inmate with a Dexedrine prescription.  He signed for 27 out of a total of thirty pills and three remained in the bottle.  Big Hair did not explain how he managed to steal Vandersloot's prescription.  The evidence was sufficient to support the verdict.

As to Vandersloot's sentencing claims, he exercised his right to remain silent in the presentence interview, and he identifies no federal right to counsel in a presentence interview.  He avers that the presentence report would not have been "vindictive" or inaccurate if counsel had been present, but he identifies nothing in the report that is vindictive or inaccurate or that could not be corrected at the sentencing hearing.  He alleges that his sentence was excessive, but it was well below the statutory maximum.  No federal law requires state drug sentences to be proportional to the amount of drugs involved.  Finally, the conditions of his parole are not irrational.  They are related to matters that came out at his trial.

A certificate of appealability should be denied.

ORDER AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 26

Based on the foregoing, the Court enters the following:

ORDER

Vandersloot's motion to lift the stay (doc. 23) is GRANTED.

The Court also enters the following:

RECOMMENDATION

1.  Vandersloot's Petition (doc. 1) and Amended Petition (doc. 16) should be DENIED on the merits.

2.  The Clerk of Court should be directed to enter judgment by separate document in favor of Respondents and against Petitioner.

3.  A certificate of appealability should be DENIED.

NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.   A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the

Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Vandersloot must immediately advise the Court of any change in his mailing address while this action remains pending.  Failure to do so may result in dismissal of this case without notice to him.

DATED this 23rd day of April, 2009.


/s/ *Carolyn S. Ostby*
Carolyn S. Ostby
United States Magistrate Judge